Bernard **GOLDFINE**, Defendant, Appellant,

v.

**UNITED STATES** of America, Appellee.

Mildred **PAPERMAN**, Defendant, Appellant,

v.

**UNITED STATES** of America, Appellee.

Nos. 5460, 5461.

United States Court of Appeals First Circuit.

July 24, 1959.

Rehearing Denied Aug. 14, 1959.

Harold Rosenwald, Boston, Mass., with whom Burton L. Williams, Boston, Mass., James R. McGowan, Westwood, Mass., and Paul A. Powell, Brookline, Mass., were on brief, for appellants.

Andrew A. Caffrey, Asst. U. S. Atty., Boston, Mass., with whom Anthony Julian, U. S. Atty., and George H. Lewald, Asst. U. S. Atty., Boston, Mass., were on brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Circuit Judge (Retired).

These appeals arise out of perhaps the most publicized cases heard this year. We are unable, however, to find any substance in appellants' contentions.

It appears that during the summer of 1958 the Internal Revenue Service started looking into the tax liabilities of five corporations in which Bernard Goldfine had an interest, namely, the Lebanon Woolen Mills Corporation, Lebandale Mills, Inc., George Mabbett & Sons Company, Strathmore Woolen Company, and Northfield Mills, Inc., at least some of which corporations had filed no income tax returns for several years.

Appellant Goldfine was president and treasurer at all material times of three of these corporations, Lebanon Woolen Mills Corp., Lebandale Mills, Inc., and Strathmore Woolen Co. He was also president of George Mabbett & Sons Co. It is undisputed that by virtue of such offices Goldfine has had, during all material times, the control of the records of these corporations, and that appellant Mildred Paperman has at all material times been in actual control of the records of Strathmore Woolen Co. and of Northfield Mills, Inc.

Pursuant to administrative subpoenas issued by the Internal Revenue Service to assist in its current investigations, the records of these five corporations were made available to agents of the Service at Goldfine's office, 35 Kneeland Street, Boston, Massachusetts. Goldfine instructed the various bookkeepers, including appellant Paperman, to cooperate fully with the Internal Revenue Service.

Subsequently, at the request of counsel for the corporations, the investigation by the Internal Revenue Service was suspended for sixty days so that agents of the corporations could have exclusive access to the corporate records for the purpose of preparing and filing their delinquent income tax returns. At this time it was made clear to appellants' counsel that the government was not abandoning its subpoenas and its investigation but merely suspending a portion of its inquiry for the sole purpose stated. "Accordingly, when we resume our examination, our audit will not be deemed a new inspection of the taxpayers' books of account within the purview of Section 7605(b), Internal Revenue Code of 1954."

After the expiration of the sixty-day period the Service refused to grant a

request for extension and tried without success to obtain the return to it of the corporate records. Finally, on December 3, 1958, Group Supervisor Pastore filed in the United States District Court for the District of Massachusetts a petition for judicial enforcement of the aforesaid administrative subpoenas as provided for in §§ 7402(b) and 7604 of I.R.C.1954, 26 U.S.C.A. §§ 7402(b), 7604. See the procedure outlined in Brody v. United States, 1 Cir., 1957, 243 F.2d 378, certiorari denied 1957, 354 U.S. 923, 77 S.Ct. 1384, 1 L.Ed.2d 1438. An order to show cause was issued, which came on for hearing before the district court on December 5, 1958. The outcome of this hearing was the issuance by the district court on the same day of a so-called "Interim Order" under which appellants were directed to produce at the office of the Internal Revenue Service, 55 Tremont Street, Boston, certain records of the corporations involved on or before a specified time on Monday, December 8, 1958. At this initial stage of the proceeding the district court elected not to issue a turn-over direction in the breadth requested by the government. Instead it chose to exclude from its interim order the records relating to all tax years with respect to which any contentions had been made by appellants that the taxing authorities had already completed an audit while the documents were previously available for their inspection, whether or not the United States admitted that such a prior audit had been completed. The district court also chose to exclude from its enforcement order the records relating to any tax year with respect to which appellants had made the contention that the statute of limitations would apply (unless fraud were found). In addition, the district court struck out from the government's proposed order a request for the "stock certificate book" and other unspecified documents of each corporation. An appeal was attempted by the appellants from this interim order. In Goldfine v. Pastore, 1 Cir., 1958, 261 F.2d 519, we denied an application by the appellants for a stay of the district

court's interim order pending appeal because we thought that, although a final enforcement order would be appealable, O'Connor v. O'Connell, 1 Cir., 1958, 253 F.2d 365, this was clearly just an interlocutory order from which we were without jurisdiction to entertain an appeal as of right. Later, by order entered February 12, 1959, we dismissed this appeal for lack of jurisdiction.

Claiming that the records had not been produced as set forth in the interim order, the United States Attorney late on December 10, 1958, filed against each of the said appellants a petition for attachment for criminal contempt. The petition against Bernard Goldfine was in three counts. Count I charged that Goldfine was guilty of criminal contempt by willful disobedience of so much of the interim order as related to the production of the records of the Lebanon Woolen Mills Corp. The court found Goldfine guilty on this count. Count II related to the failure to produce the records of Lebandale Mills, Inc., and Count III referred to those of George Mabbett & Sons Co. Since the district court found the defendant Goldfine not guilty on Counts II and III, they will hereafter be disregarded.

The petition for attachment for criminal contempt filed against defendant Mildred Paperman was in two counts, the first charging willful disobedience in refusing to produce the records of Strathmore Woolen Co., and the second charging willful disobedience in the failure to produce the records relating to Northfield Mills, Inc. The district court found Miss Paperman guilty on both counts.

Appellants have taken these appeals from the respective judgments of conviction of criminal contempt. 169 F.Supp. 93.

We reject the contention that the evidence was not sufficient to establish beyond a reasonable doubt, what the district court found, that appellants deliberately and intentionally disobeyed the interim order of December 5, 1958.

The district court's memorandum finding appellants guilty of criminal contempt focused on the following seven so-called "listed records", production of which was required by the interim order:

1. Accounts receivable ledger of Lebanon Woolen Mills Corp., for 1952 through 1957. (Exhibit AA)

2. Accounts payable ledger of Lebanon Woolen Mills Corp. for 1952 through 1957. (Exhibit AB)

3. Accounts receivable ledger of Strathmore Woolen Co. for 1953 through 1957. (Exhibit E)

4. Accounts payable ledger of Strathmore Woolen Co. for 1953 through 1957. (Exhibit D)

5. Canceled checks of Strathmore Woolen Co. for 1953 through 1957. (Exhibit F)

6. Accounts receivable ledger of Northfield Mills, Inc., for April 30, 1952, through April 30, 1957. (Exhibit T)

7. Accounts payable ledger of Northfield Mills, Inc., for April 30, 1952, through April 30, 1957. (Exhibit U)

■ The district court correctly stated that the burden was on the government to prove beyond a reasonable doubt the presence of these six elements:

"(1) that the Court issued an order for the production at a particular time and place of a record adequately described in the order, (2) that the defendant was served with (or otherwise knew of) the order, (3) that the record existed at the time the order was served, (4) that the defendant had control (or lawful power to acquire control) of the record, (5) that the defendant failed to produce (or cause the production of) the record, and (6) that the defendant acted wilfully."

We are satisfied that these records and the time and place for their production were adequately described in the interim order, and that, as stated above, the appellants had control over them.

They admittedly were served with the order, and they even attempted to appeal from it. There is no doubt that the records existed (and appellants so conceded in oral argument before us), and that they were not produced at the office of the Internal Revenue Service, 55 Tremont Street, Boston, on or before the deadline on December 8. They were actually produced by defendants in the courtroom on December 18, during the contempt trial.

■■ The only one of the six elements which is really in dispute is the sixth one, that the appellants acted willfully in failing to produce the aforesaid records. Willfulness almost necessarily has to be proved as an inference from circumstantial evidence; and in this case we cannot say that the district court erred in drawing that inference. Indeed we cannot see how the court could have failed to draw such inference. The government does not have the burden of negativing all possible excuses for noncompliance with a court order. It is enough to make out a prima facie case for the government to show, as the government did below, that the appellants, in response to the interim court order calling for the production of corporation records, refused to surrender them when they were in existence and within their control. See Nilva v. United States, 1957, 352 U.S. 385, 392, 77 S.Ct. 431, 1 L.Ed.2d 415. Counsel for the defendants suggested at various times that their failure to produce the seven listed records, as required in the interim order, might have been due to the advice of counsel, which might negate willfulness. But that was only suggestion, and although the district court twice commented that the defendants had offered no evidence to support that suggestion, counsel neither took any action, made any reply, nor sought to reopen the case.

Though the corporations were located elsewhere, it is conceded, as appears to be clear, that all the "listed records" involved were physically present at Goldfine's office, 35 Kneeland Street, Boston. If defendants could cause the production

of the records in the courtroom on December 18, it is difficult to believe that they had no power to produce them a few days earlier at the office of the Internal Revenue Service.

We may assume that, because the interim order was appealable only by a certificate of the district court which was not given and by leave of this court, appellants might defend against even charges of criminal contempt by showing the interim order to be invalid, despite the holding in United States v. United Mine Workers, 1947, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884. But it is clear that the interim order, as signed, was not unreasonable or in violation of any rights of appellants or of the corporations.

When these documents were produced in court on December 18, it was for the avowed purpose of demonstrating to the court that they were current records in use by the corporations and that compliance with the interim order would make it impossible for the corporations to conduct their business. This suggestion of course could not excuse failure to deliver the records contained in Exhibit F, which consisted of one small envelope containing bank statements and a number of canceled checks of Strathmore Woolen Co. covering only the period from 1953 to 1957. Furthermore the excuse is insubstantial, for the reasons stated by the district court in its finding 22:

"The records when offered in court were shown not to be bound books with stitched pages, but loose leaf folders containing pages clamped together by posts that were readily unclamped or unscrewed. Moreover, it appeared that most of the pages had entries all of which antedated 1958, but that some of the pages had entries for periods of time both preceding and including 1958, and perhaps a few of the pages had entries only for 1958. Counsel conceded that the pages were susceptible of photostating, though no concession was made as to how promptly the photostating could have been done. Finally, counsel conceded that at no time before Thursday, December 18, had anyone drawn to this Court's attention the fact that Exhibits AA, AB, AC, E, D, F, T, and U had within their four corners both records called for by the Interim Order and also records not so demanded, and that at no time had anyone proposed segregation of the two types of records, photostating, partial surrender, or other accommodating techniques."

We find nothing in the record to sustain the contention of appellants to the effect that the interim order was invalid in its failure to afford appellants a "reasonable time" within which to comply with its requirements. So far as appears, this contention was not made in the district court until the hearing on the charges of criminal contempt; the only previous requests made were for time for counsel to prepare their arguments. Nor did the defendants introduce any testimony in the contempt trial to sustain their theories of unreasonableness.

 Other contentions by appellants, which we find it desirable to comment upon specifically, are of a more technical nature. It is suggested, by reference to expressions in dissenting opinions in the Supreme Court, that the convictions of criminal contempt are in violation of the constitutional rights of appellants under the Bill of Rights, in that the charges of criminal contempt were not initiated by a presentment or indictment of a grand jury, and that appellants were convicted by the district court, sitting without a petit jury.

It must be borne in mind that this court, as an intermediate appellate court, would certainly look very foolish if it took its law from a dissenting opinion, even from a dissenting opinion by a justice of the Supreme Court of the United States. In answer to this particular argument, we need only refer to the decisions of the Court in Nilva v. United States, supra, 352 U.S. 385, 77 S.Ct. 431, 1 L.Ed.2d 415; Green v. United States, 1958, 356 U.S. 165, 78 S.Ct. 632, 2 L.Ed.

2d 672, and Brown v. United States, 1959, 359 U.S. 41, 79 S.Ct. 539, 3 L.Ed.2d 609. 18 U.S.C. § 402, relied upon by appellants, is pathetically inapplicable, since under the very terms of the section it is said not to be construed as relating "to contempts committed in disobedience of any lawful writ, process, order, rule, decree, or command entered in any suit or action brought or prosecuted in the name of, or on behalf of, the United States, but the same * * * may be punished in conformity to the prevailing usages at law."

Much is made of the fact that the trial for criminal contempt was had before the same district judge (Judge Wyzanski) who issued the interim order alleged to have been disregarded. This procedure is routine in criminal contempt cases. Rule 42 of the Federal Rules of Criminal Procedure, 18 U.S.C. issued by the Supreme Court, does specifically require the trial judge to disqualify himself from sitting at the hearing of a charge for criminal contempt in the very understandably human situation where "the contempt charged involves disrespect to or criticism of a judge"; but otherwise, the rule contains no provision for a mandatory disqualification. It is said that Judge Wyzanski had obtained an unfavorable impression of appellants while sitting in other litigation in which they were involved. These prior litigations must have been familiar to appellants, but they made no motion before Judge Wyzanski asking him to disqualify himself. Moreover, there is no evidence of such impressions except certain remarks by the court in pronouncing the sentences. These phrases, read in context, cannot serve as the basis for any charge of prejudice. Under the circumstances, and in view of the concession in appellants' brief that there "can be no doubt that Judge Wyzanski made every conscious effort to be objective and impartial in this case", and in view of the inescapable force of the evidence presented by the government, and the obvious fairness of the sentences, we cannot find that the district judge committed an abuse of discretion in failing to disqualify himself on his own motion.

Some reference is made to the sentences, and to the fact which has disturbed the Supreme Court somewhat, that there is no maximum statutory limit to the sentencing power of the district court in criminal contempt cases. Here the judgment of conviction sentenced appellant Goldfine to be committed "to the custody of the Attorney General or his authorized representative for imprisonment for a period of three months." In the judgment of conviction of Miss Paperman, she was committed to the custody of the Attorney General for a period of ten days. These sentences which, if anything, err on the side of moderation, are justified and well within approved limits. See Green v. United States, supra, 356 U.S. 165, 78 S.Ct. 632, 2 L.Ed.2d 672; Brown v. United States, supra, 359 U.S. 41, 79 S.Ct. 539, 3 L.Ed. 2d 609; and Brody v. United States, supra, 1 Cir., 243 F.2d 378, certiorari denied 354 U.S. 923, 77 S.Ct. 1384, 1 L. Ed.2d 1438. We find no abuse of discretion in this particular.

Judgments will be entered affirming the judgments and orders of the District Court.