THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ISIDRO ESCALERA, Defendant and Appellant.

No. CR-66-157.    Decided June 29, 1967.

*Santos P. Amadeo* and *José M. Tejada* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Irene Curbelo, Assistant Solicitor General,* for The People.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

For the last thirteen years appellant Isidro Escalera has discharged the duties of Record Officer in the District Jail of San Juan.

On January 17, 1966, the Superior Court, San Juan Part, entered the following:

## "ORDER

"WHEREAS: On January 17, 1966, in San Juan, Puerto Rico, defendant ISIDRO ESCALERA committed the following facts:

"Having failed to appear at this Court on January 17, 1966 for the continuation of the hearing against Heriberto Castro Nieves, who was being tried for the offense of murder in the first degree and others, Crim. No. G-65-1464 (and others) in spite of having been duly summoned.

"WHEREAS: The aforesaid facts charge defendant Isidro Escalera with criminal contempt, which are informed to him for the corresponding purposes.

"THEREFORE: By virtue of the provision of Rule 242(b) of the Rules of Criminal Procedure, the Court orders the arrest of defendant Isidro Escalera, fixing a bail bond of $_____ for his provisional release; and the defendant is hereby given notice of the opportunity to be heard at a hearing which shall be held in this court on January 25, 1966, at 8:30 a.m. where he will have the opportunity of presenting his defense why he should not be found guilty of Criminal Contempt.

"The Secretary will summon the following witnesses for the People for said act:

_____

"Issued in open Court, in San Juan, Puerto Rico, this 17th day of January 1966.

(Signed) Guillermo A. Gil
Judge"

On the day set for the hearing respondent appeared personally and assisted by counsel. The presiding judge read the contents of the order, and immediately respondent's attorney sat him on the witness stand. Respondent testified that on January 17, 1966, between 10:30 or 11:30 a.m. he received a telephone call from Marshal Seguí ordering him to deliver to the court the records of three persons. He informed the Marshal that he did not have transportation because the chauffeur of the jail bus became insane and he

was taking the steps to take him to the penitentiary. The Marshal told him not to bother, that he was going to take some people to "La Princesa" jail and that he would bring him to court. He continues testifying ". . . I continued taking the steps to see if I could take the man to the penitentiary and I forgot the matter. Then, about 2:00 p.m. I received the telephone call again and the penal officer of the institution offered me transportation and I sent the records." He testified that although Marshal Seguí must have gone to the jail, since he delivered some prisoners there, he did not learn about it. He explained the reason why he did not go to court with the Marshal as follows: "Well, because I was not told: 'There is Seguí' or anything; I continued working in the office and I also forgot, because I had, there was a serious problem in the institution, of a man, who the day before was all night talking about Christ and of the Bible and all those things. Then, in the morning . . . he was precisely the chauffeur of our bus. Then I had to be taking steps to take that man away from there and deliver him to the penitentiary, because that is where he belongs; and I continued taking steps in relation to that man counting on that I was going to remember the time when I had to come to court, and then about 2:00 p.m. I was again reminded, they called me on the phone and then I sent my assistant, Marrero, with the three records and the officer, who lent his car to bring the records." Other parts of the record reveal the following:

"Judge:

"Q. And then you did not consider that you should come to Court personally to offer your excuses to the court for having forgotten in the morning, and instead you sent your assistant to the Court; you did not come either until the court ordered your arrest to come to court. Was that so?

"A. It was. That is, but it was never my intention to disregard or disobey the court order, but as there are so many problems in the Record Office, especially now after Christmas,

so many problems, I said: 'Marrero, you go.' Because I can manage the office more efficiently than he can because I know the situation in the office more in detail and I told him—as it was only to bring the records, I did not think I was needed personally, but the records—I told him—'Marrero, take the records there immediately.' That was the situation." (Tr. Ev. pp. 7–8.)

Later the judge indicated that what the court wanted were the records but that whenever he was summoned he should ask whether his personal appearance was necessary or whether he could delegate an assistant; that respondent had forgotten the summons of the morning and when he was summoned again instead of appearing to offer excuses he sent his assistant. Then defendant said:

"Your Honor, excuse me, it is as you said, that I sent Marrero, but it was never my intention . . . because in my 13 years as record officer I had never been summoned for contempt, that is, I have never had any problems with the Court but I thought, you know, that I could send Marrero, since what you needed were the records; it never occurred to me that I was incurring contempt of Court. Because I offer the best possible service to the court and I know the Marshals and his Honor the Prosecuting Attorney and everybody. It never occurred to me that I was offending the Court in that manner. (Tr. Ev. p. 9.)

After respondent finished his testimony the court found him guilty of criminal contempt and entered the following judgment:

"JUDGMENT

"Today, January 25, 1966, there appeared at this Court The People of Puerto Rico, represented by prosecuting attorney Mr. Carlos R. Noriega and defendant Isidro Escalera represented by his counsel, Mrs. Ludmilia Rivera Burgos. After the arraignment defendant pleaded not guilty.

"After hearing the evidence the Court found defendant Isidro Escalera guilty of contempt and orders him to pay a fine of five ($5) dollars, or one day in jail for each dollar left unpaid.

·"And it is hereby ordered that said defendant be immediately taken under the custody of the corresponding petitioner and be detained by the latter until the sentence is complied with.

"San Juan, Puerto Rico, January 25, 1966.

(Signed) Guillermo A. Gil
Judge

I attest:
Edgardo Rivera Santini
  Clerk

By:

(Signed) C. Rosario
        Assistant Clerk"         (Tr. of R. p. 8.)

Rule 242 of the Rules of Criminal Procedure establishes the proceeding in cases of criminal contempt. Said Rule provides:

"(a) *Summary proceeding*. Criminal contempt may be punished in a summary way, provided, that the judge certifies that he saw or heard the behavior constituting contempt, and that it was committed in the presence of the court. The order convicting of contempt shall set forth the facts and be signed by the judge, and record thereof shall be kept in the minutes of the court.

"(b) *Ordinary proceeding*. Except as provided in paragraph (a) of this Rule, in every case of criminal contempt, the defendant shall be notified and given the opportunity to be heard. The notice shall state the place, time and date of the hearing, it shall grant the defendant a reasonable time to prepare his defense, it shall inform the defendant that he is charged with criminal contempt, and it shall set forth the essential facts constituting the same. The defendant shall have a right to be released on bail pursuant to the provisions of these Rules. If the contempt is based on disrespectful acts or behavior towards a judge, the latter shall not try the case, except with the defendant's consent." (Solicitor General's Report pp. 6 and 7.)

█ The order or judgment of the judge does not contain a statement of the facts constituting contempt. If this is an

indispensable requirement for the validity of the judgment in case of a constructive contempt, as this is an appeal from said judgment, at least, the absence of such requirement would influence us to remand the case for the rendering of a new judgment.

The main question raised, however, is whether, in the light of the facts which appear from the record, appellant committed criminal contempt intentionally.

■■ The Act of March 1, 1902, as subsequently amended, empowers the court to inflict punishment for criminal contempt, among other cases, for "Wilful disobedience of, or resistance offered to or exerted against any lawful writ, mandate or order issued or made by any such court in a suit or action pending . . . ." Although the courts of general jurisdiction have inherent power to inflict punishment for contempt—*De Torres* v. *District Court*, 58 P.R.R. 519, 529 (1941)—it may be said that the aforecited Act of March 1, 1902, covers the actions charged against appellant. In either case, appellant's criminal intent must be present in criminal contempt. Not every disobedience of a court order constitutes criminal contempt where the element of intent is lacking in the disobedience. *Yates* v. *United States*, 316 F.2d 718; *Goldfine* v. *United States*, 268 F.2d 941; *United States* v. *De Simone*, 267 F.2d 741; 8 Moore, Federal Practice, § 42.04 (3).

The statements made by the trial judge during the hearing, make us believe that had the defendant appeared in the afternoon session bringing the requested records, instead of sending them with his assistant, and explained at that time his failure to appear in the morning session, judgment of contempt would not have been rendered. The judge said:

"The court considers all those circumstances and if defendant or respondent had come in the afternoon . . . . He created a problem here, he interrupted the hearing of a case of murder which was being held, and he did not feel obliged, at least, to

come personally to explain his behavior to the court that afternoon but he still delegated another person and sent the records as if nothing had happened, as if forgetting an official order of the court were not important enough for him to appear here personally to explain his behavior." (Tr. Ev. p. 11.)

■ The following circumstances lead us to the conclusion that in this case there was absence of criminal intent on the part of defendant: (1) Defendant was summoned by telephone between ten and eleven of the same morning when he should appear in court taking with him certain records, at the time appellant was working on the solution of a problem created by the evident condition of insanity of the chauffeur of the jail, (2) his justified belief that Marshal Seguí would provide him with transportation to the court, as he had promised, (3) his involuntary forgetfulness, when nobody informed him that Marshal Seguí had been in the jail to deliver some prisoners, that he had to appear in court in the morning session, (4) his honest belief, when he received the second telephone call in the afternoon that what the court wanted was the records, and not his testimony, which was true, (5) his immediate obedience to the second telephone call sending the records to the court with his assistant, (6) he is an employee that, up to now, for 13 years, has obeyed all the orders of the judicial authority.

Consequently, the judgment appealed from will be reversed and another one rendered acquitting defendant.

Mr. Chief Justice Negrón Fernández did not participate herein.