**UNITED STATES of America, Plaintiff,**
v.
**Joe Sam WILLIAMS, Defendant.**
**No. CR–2–81–45.**

United States District Court,
E.D. Tennessee,
Northeastern Division.

Feb. 10, 1982.

On Motion to Reconsider Feb. 24, 1982.

On Subpoena Ad Testificandum
March 31, 1982.

Guy W. Blackwell, Asst. U.S. Atty., Greeneville, Tenn., for plaintiff.

J. Wayne Wolfenbarger, Rutledge, Tenn., for defendant.

## MEMORANDUM TO COUNSEL

NEESE, District Judge.

The Court has under advisement its pretrial determination, Rule 12(d); Federal Rules of Criminal Procedure, of the admissibility or unadmissibility, Rule 12(c), Federal Rules of Criminal Procedure, of evidence relating to the crimes with which the defendant is charged. He has moved for its suppression, Rules 12(b)(3), 41(f), Federal Rules of Criminal Procedure, on grounds that it was obtained in violation of the Constitution, Fourth Amendment, and that its use against him herein would infringe his immunity against self-incrimination, Constitution, Fifth Amendment.

For purposes of the former objection and this memorandum only, these facts and circumstances are crucial:

The disputed evidence was obtained by federal officers for use herein without a search-warrant from a state officer who had safekept it for use in a potential state-prosecution which has never come-about on a different charge. *United States v. Gargotto*, C.A. 6th (1973), 476 F.2d 1009, 1014[8]

(such is permissible constitutionally). Other state officers had acquired it warrantlessly from a car which Mr. Williams had occupied when it was wrecked at a place other than the place of their search-and-seizure of it, and he had not then (or since) been arrested on its account except herein. *Preston v. United States* (1964), 376 U.S. 364, 368, 84 S.Ct. 881, 883, 11 L.Ed.2d 777, 781, as explicated and distinguished in *Cooper v. California* (1967), 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730; *Chambers v. Maroney* (1970), 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419, 428[9]; *Texas v. White* (1975), 423 U.S. 67, 67–68, 96 S.Ct. 304, 305, 46 L.Ed.2d 209, 211–212[1], [2]; *Colorado v. Bannister* (1980), 449 U.S. 1, 4, 101 S.Ct. 42, 44, 66 L.Ed.2d 1, 4; *Washington v. Chrisman* (1982), 455 U.S. 1, 5–7, 102 S.Ct. 812, 816–17, 70 L.Ed.2d 778.

The prosecution has not carried its burden of showing that the impoundment of the wrecked vehicle at the place on the embankment of a highway it had come to rest, *Cardwell v. Lewis* (1974), 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (summary, at (2)), was necessary and reasonable; and, these officers' seizure of it by impoundment was, accordingly, "unreasonable in violation of the [federal Constitution,] Fourth Amendment * * *," *Drinkard v. State* (1979), (248 Tenn.), 584 S.W.2d 650, 653[1], 653–654[2]. Mr. Williams, obviously in need of it, was being aided when these officers had arrived in response to the emergency from those better equipped and with greater expertise than the officers could offer. No reason was assigned for the summoning of a wrecker to the scene of this accident, which the highway-patrolman had done immediately upon observing the position of the wrecked-car by radio-transmission available in the departmental-cruiser present.

After the wrecker had been summoned, 1 of the officers saw in his own plain view near the open front-door of, and both officers saw in their own plain view inside, the wrecked-car, a large—in the aggregate— volume of what the only witness described as "bookie-slips" as well as other documents indicative that they were being utilized in the carrying-on of the business of accepting wagers on the outcomes of professional football-games. *Cf. Bohn v. United States,* C.A. 8th (1959), 260 F.2d 773, 776, certiorari denied (1959), 358 U.S. 931, 79 S.Ct. 320, 3 L.Ed.2d 304, rehearing denied (1959), 360 U.S. 907, 79 S.Ct. 1283, 3 L.Ed.2d 1258.

The possession of any gaming device by any person was then unlawful under Tennessee law. T.C.A. § 39–2006. It was reasonable for the state officers to believe that the contents inside the car constituted gaming devices. *Van Pelt v. State* (1952), 193 Tenn. 463, 468(1), 246 S.W.2d 87 ("policy-slips" are such gaming-devices); *Storey v. State* (1960), 207 Tenn. 326, 339 S.W.2d 485 (current "butter-and-egg slips" are such gaming-devices).

If it was reasonable for them to believe such contents offended against the law, as they had an entirely legitimate reason to be in the position to see immediately outside and inside the car, *Milcey v. Arizona* (1978), 437 U.S. 385, 392–393, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290, 300[6], [7], then they were provided with probable-cause, not only to apprehend Mr. Williams as then a person " * * * known * * *" to them, " * * * upon [their] own view to be [presumptively] guilty * * *" of violating the gaming-laws, T.C.A. § 39–2007, but they had probable-cause as well " * * * to seize the incriminating items without a warrant. [Footnote reference omitted]. * * *" *Colorado v. Bannister, supra,* 449 U.S. at 4, 101 S.Ct. at 44, 66 L.Ed.2d at 4 [1b]. They, " * * * had the right to act as soon as * * *" "they observed the documents inside the car. * * *" *Washington v. Chrisman, supra,* 455 U.S. at 7, 102 S.Ct. at 818.

The officers were under a duty, under these circumstances, not only to apprehend a person guilty of violating the gaming-laws of their state but also to incarcerate him or her until the time of his or her trial. T.C.A. § 39–2007, *supra.* Mr. Williams was in a semi-conscious condition on September 1, 1978, and they neither arrested nor incarcerated him on-the-spot or afterward. (Mr.

Williams has not been prosecuted for such alleged violation in the more than 3 years since intervening.)

The search-and-seizure of the wrecked car while it was at the garage in the custody of the officers cannot be justified as reasonable as an incident to an administrative-inventory of its contents. They had not impounded it because it was interfering with traffic or constituted a hazard to some element of public safety, *cf. South Dakota v. Opperman* (1976), 428 U.S. 364, 368, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000, 1005[4]; their impoundment was to " * * * preserve evidence * * *," *idem.*, by actually searching the car and seizing the law-offending evidence therefrom after impounding it and having it towed and safeguarded at the garage whence the wrecker had been summoned.

Thus, their intrusions into the car at the garage had no purpose of making and keeping the car and its contents secure for its disabled occupant and taking an administrative-inventory of its contents in compliance with any standard procedure. *Ibid.*, 428 U.S. at 365–367, 96 S.Ct. at 3095, 49 L.Ed.2d at 1009[1b]. Rather, they were engaged at that later time in a criminal contact with the vehicle to seize physically and preserve evidence of criminality with which to prosecute Mr. Williams.

The failure of the officers to seize the contraband they had seen inside the car where it was at rest after wrecking when they had probable cause so to do constitutionally; their impounding it unconstitutionally for their own convenience in furthering their investigation thereafter; their making a subsequent search, after having violated Mr. Williams' constitutional right under the Fourth Amendment by an illegal seizure; and their seizure of the disputed evidence at another time and place, complicates factually the issue to be determined. There are no " * * * per se rules * * *" by which the reasonableness of the search-and-seizure of the car at the garage may be tested; " * * * each case must be judged on its own facts. * * *" *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 509–510, 91 S.Ct. 2022, 2060, 29 L.Ed.2d 564, 608 (separate concurring and dissenting (and his final) opinion of the late Justice Black).

The question is whether, under all the peculiar facts and circumstances presented, the intrusions of the officers into the constitutionally-protected effect (automobile), *Cady v. Dombrowski* (1973), 413 U.S. 433, 439, 93 S.Ct. 2523, 2527, 37 L.Ed.2d 706, 714, of its occupant, and his (presumably, here) effects inside it, which offended against the law, *supra,* were reasonable or unreasonable. *Ibid.,* 413 U.S. at 439, 93 S.Ct. at 2527, 37 L.Ed.2d at 713[1]. Mr. Williams' " * * * right of privacy * * * [at the various and respective times implicated] * * * is the touchstone of our inquiry. * * * " *Cardwell v. Lewis, supra,* 417 U.S. at 591, 94 S.Ct. at 2469, 41 L.Ed.2d at 335[8].

Accordingly, counsel for the adverse parties will submit simultaneously to the Court through the clerk within 7 working-days herefrom respective briefs addressing (at least) these collateral issues:

I

A. (1). Did the officers have probable-cause reasonably to believe Mr. Williams was in violation of the law when neither of them ever saw him in the actual possession of items which offended against the law? *Cf. inter alia: Cardwell v. Lewis, supra,* at 591, n. 6, 94 S.Ct. at 2470, n. 6, 41 L.Ed.2d at 335, n. 6[9]?

(2). How is any such probable-cause affected herein by the arrest in *Cardwell* and no arrest herein?

(B)(1). Did the exposure by the occupant to public view of contents in the vehicle, which eliminated its occupant's privacy-interest therein, eliminate also his privacy-interest in such car? *Cf. inter alia: United States v. Chadwick* (1977), 433 U.S. 1, 16, n. 10, 97 S.Ct. 2476, 2486, n. 10, 53 L.Ed.2d 538, 551, n. 10.

(2). How is the rule in *Chadwick* affected herein by the arrest in *Chadwick* and no arrest herein?

C. What is any effect on the search-and-seizure at the garage of the fact that the

vehicle unconstitutionally impounded was not *lawfully in* the indirect custody of the officers who seized it? *Cf. inter alia: Texas v. White, supra; South Dakota v. Opperman, supra,* 428 U.S. at 368, 96 S.Ct. at 3096, 49 L.Ed.2d at 1005[4]; *Preston v. United States, supra; Cooper v. California, supra; Chambers v. Maroney, supra; Colorado v. Bannister, supra; Drinkard v. State, supra;* and *Mincey v. Arizona, supra.*

D. (1). Did the illegality of the impoundment taint the evidence seized when the officers had had it in their own plain view *before* the illegal seizure by impoundment, as opposed to thereafter? *Cf. inter alia: Coolidge v. New Hampshire, supra,* 403 U.S. at 468, 91 S.Ct. at 2039, 39 L.Ed.2d at 584[14] and cf. [15]; and *Wong Sun v. United States* (1964), 371 U.S. 471, 485, 83 S.Ct. 407, 416, 9 L.Ed.2d 441, 453 (headnote 12);

(2). May the physical evidence seized be used as proof against Mr. Williams herein? *Cf. inter alia, ibid.,* 371 U.S. at 485, 83 S.Ct. at 416, 9 L.Ed.2d at 454 (and the use of the term, obtained);

(3). May testimony relating to the evidence seized be given as proof against Mr. Williams if the physical evidence is barred for use? *Cf. inter alia: Silverthorne Lumber Co. v. United States* (1920), 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 317, 321 (headnote 1); and *see Gelbard v. United States* (1972), 408 U.S. 41, 63, 92 S.Ct. 2357, 2368, 33 L.Ed.2d 179, 195 (separate concurring opinion).

## II

What is any effect on the issue to be determined of *Grosso v. United States* (1968), 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906, and *Marchetti v. United States* (1968), 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889?

The clerk will serve adversary counsel herein forthwith with a copy hereof.

\* Erroneously cited in such memorandum as "Rule 12(d), Federal Rules of Criminal Proce-

## ON MOTION TO RECONSIDER

■ After the Court received briefs as a result of its memorandum of February 10, 1982 to counsel herein, upon more mature consideration, it determined pretrial, Rule 12(e), Federal Rules of Criminal Procedure,\* that the evidence seized from the defendant by law-enforcement officers of the state of Tennessee from a wrecked car of which Mr. Williams had been the only occupant was admissible against him herein, Rule 12(c), Federal Rules of Criminal Procedure. Accordingly, his motion to suppress such evidence, Rules 12(b)(3), 41(f), Federal Rules of Criminal Procedure, was denied.

A brief resume of the circumstances surrounding this reappraisal is in order: Mr. Williams ran his car off of an embankment of the roadway of an interstate highway route in Jefferson County, Tennessee in the midafternoon of September 1, 1978. He was rendered semi-conscious in the wreck, and rescuers—fearing aggravating any possible injury to his back—decided wisely to pry-open the damaged front door of the passenger's side of the wrecked car and remove him through it. In the process, the door was damaged to the extent that the car could not be locked and left where it came to rest.

The seizing officers were dispatched officially to the scene of this wreck and came to the reasonable belief on their arrival there that Mr. Williams' need was for immediate aid. Thus, their attention to this particular vehicle was initially in a noncriminal context.

Rescue squadsmen and paramedical personnel were attending Mr. Williams, but the officers were on the scene and available to aid Mr. Williams personally if the need arose. During the course of their legitimate activities in this emergency, the officers were authorized to seize without a warrant any evidence in their plain view. *Mincey v. Arizona* (1978), 437 U.S. 385, 392–393, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290, 300[6], [7].

dure."

While positioned where they had for such reason a right to be, the officers saw immediately within the area of and in the wrecked vehicle evidence that Mr. Williams was keeping in the car he occupied devices which from their nature, condition and location they believed reasonably constituted under Tennessee law T.C.A. § 39–2006, devices for gaming or enticing another person to gamble. *Burks v. State* (1953), 194 Tenn. 675, 682[8], 254 S.W.2d 970 ("Whether a device be kept 'for gaming' or 'for enticement of any person to gamble' depends not only on the nature of the device, but on its condition and location.") It being unlawful for Mr. Williams to possess such gaming devices for such use and intention, such property was contraband. *Maryland Penitentiary v. Hayden* (1967), 387 U.S. 294, 301, 87 S.Ct. 1642, 1647, 18 L.Ed.2d 782, 788[8] (" * * * contraband, that is, property the possession of which is a crime.") It then became the duty of the officers to apprehend Mr. Williams as a person known to them, upon their own view, to be presumptively guilty of the offense of violating the gaming laws of the state of Tennessee and to incarcerate him forthwith pending his trial. T.C.A. § 39–2007.

These observations and beliefs of the officers, that there were contents within and near the car which offended against the law of their state, permitted them to arrest Mr. Williams without a warrant (had he then been in a condition to be arrested) and provided them with probable-cause to seize the incriminating contraband without a warrant. *Colorado v. Bannister* (1980), 449 U.S. 1, 4, 101 S.Ct. 42, 44, 66 L.Ed.2d 1, 4[4a]. There were also circumstances extant which permitted them to preserve the evidence of Mr. Williams' criminality by impounding the car he occupied.

█ There is an exception to the requirement for a warrant to search which serves the legitimate " * * * needs of law enforcement officers to * * * preserve evidence from destruction. * * *" *United States v. United States District Court* (1972), 407 U.S. 297, 318, 92 S.Ct. 2125, 2137, 32 L.Ed.2d 752, 767[12]. These officers had no need to impound the wrecked car " * * * as evidence * * * " in and of itself, as in *Harris v. United States* (1968), 390 U.S. 234, 235, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067, 1069 (where a vehicle itself provided evidence of a crime); however, there were present circumstances requiring them to impound the car " * * * to preserve evidence * * * " within it. *South Dakota v. Opperman* (1976), 428 U.S. 364, 368, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000, 1005[4].

When the initial contact of the officers with the vehicle was converted, by what they saw in it, from a noncriminal contact into a criminal contact with it, it remained at the scene of the emergency during which evidence of criminality was observed. It could hardly have been abandoned by them at that time at a place where it was subject to vandalism; it could not be secured by locking its doors because one such door had been pried-open and could not be reclosed. The occupant was in no condition mentally to give directions as to his preferences for its disposition by the officers. They could not seize and collect-together the voluminous loose records without an appropriate container in which to preserve them.

" * * * There existed a danger of evidence['s within it] being lost or destroyed if not immediately acquired. * * *" *United States v. Kemper,* C.A. 6th (1974), 503 F.2d 327, 333. They had already on the scene a wrecker to tow the vehicle from the scene; having it towed the short distance to the garage whence the wrecker had come would enable them to acquire the needed container and preserve the evidence seen. Under these peculiar circumstances, the Court hereby MODIFIES its former conclusion, as to the unconstitutionality of the officers' impoundment, and FINDS they took the wrecked vehicle lawfully into their constructive possession.

As to the objection of the defendant on the basis of the Constitution, Fourth Amendment, therefore, his motion to suppress the evidence was OVERRULED; the Court having FOUND that the seizure of the contraband from the wrecked vehicle at the garage was neither unreasonable nor an

unreasonable invasion of his privacy. *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, relied on by the defendant, excepts from its "exigent circumstances"—requirement to search and seize, after a plain-view sight of incriminating items, those of which constitute, as here, contraband. *Ibid.*, 403 U.S. at 462, 91 S.Ct. at 2035, 29 L.Ed.2d at 580[6]. (" * * * [T]here is nothing in this case to invoke the meaning and purpose of Carroll v. United States—no * * * contraband or * * * weapons * * * where 'it is not practicable to secure a warrant,' * * *.") The officers, having lawfully impounded the wrecked car, " * * * were authorized to treat the car in their custody as if it were their own, and the search was sustainable as an integral part of their right of retention. * * *" *Cady v. Dombrowski* (1973), 413 U.S. 433, 453, 93 S.Ct. 2523, 2533, 37 L.Ed.2d 706, 721 (separate dissenting opinions of Justice Brennan, explaining the holding in *Cooper v. California* (1967), 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730, in which dissent 3 Justices joined).

As to the defendant's claim that evidence should be suppressed on the basis of the Constitution, Fifth Amendment: " * * * The 1974 revision of the federal tax wagering laws and the concomitant change in the Treasury Department regulations have eliminated the 'real and appreciable' hazards that existed under the prior law." *United States v. Sahadi,* C.A.2d (1977), 555 F.2d 23, 27; *accord: United States v. O'Brien,* C.A.2d (1977), 555 F.2d 136. The

motion on that ground, accordingly, lacks merit also and was

DENIED.

## ON SUBPOENA AD TESTIFICANDUM

The Court has under advisement the matter of the failure of Mr. C.H. Butcher, Jr., a witness for the prosecution herein, to obey without adequate excuse a subpoena *ad testificandum* which had been served upon and acknowledged by him. This matter was taken under advisement on March 18, 1982, when it was announced in open court by an assistant United States attorney that the United States attorney of this District had made the decision not to take of his own volition action against such disobedient witness for the prosecution.

A subpoena *ad testificandum* was issued herein by or with the appropriate acquiescence of our clerk on February 1, 1982 under the seal of this Court, stating the name of this Court and the title of this proceeding; it commanded Mr. Butcher, Jr., to whom it was directed, to attend and give testimony at 201 U.S. Post Office and Courthouse in the City of Greeneville, Tennessee on the 22nd day of February, 1982 at 9:30 o'clock, a.m. *See* Rule 17(a), Federal Rules of Criminal Procedure.[1] It was served by a deputy marshal of this District by delivering it to Mr. Butcher, Jr.[2] on February 2, 1982. *See* Rule 17(d), Federal Rules of Criminal Procedure.[3]

" * * * It is beyond controversy that one of the duties which the citizen owes to his government is to support the administration of justice by attending its courts and

---

1. " * * * A subpoena shall be issued by the clerk under the seal of the court. It shall state the name of the court and the title, if any, of the proceeding, and shall command each person to whom it is directed to attend and give testimony at the time and place specified therein. The clerk shall issue a subpoena, signed and sealed but otherwise in blank to a party requesting it, who shall fill in the blanks before it is served. * * *" Rule 17(a), Federal Rules of Criminal Procedure.

2. The serving-officer returned the subpoena with the notation, *inter alia:* " * * * I served it on the within [sic: foregoing] named C.H. Butcher, Jr. by delivering a copy to him. Mr.

Butcher was in conference and was notified of the spa. [sic: subpoena] by his secretary. Mr. Butcher acknowledged spa. and secretary accepted it in his behalf." As to such federal process, " * * * in-hand service is not required. * * *" *Hanna v. Plumer* (1965), 380 U.S. 460, 466, 85 S.Ct. 1136, 14 L.Ed.2d 8, 14.

3. " * * * A subpoena may be served by the marshal * * * [or] * * * by his deputy * * *. Service of a subpoena shall be made by delivering a copy thereof to the person named * * *." Rule 17(d), Federal Rules of Criminal Procedure.

giving his testimony whenever he is properly summoned. * * * And the Congress may provide for the performance of this duty and prescribe penalties for disobedience. * * *" *Blackmer v. United States* (1932), 284 U.S. 421, 438, 52 S.Ct. 252, 255, 76 L.Ed. 375, 383 (headnote 7). As Chief Justice Burger observed in a noteworthy setting:

> * * * We have elected to employ an adversary system of criminal justice in which the parties contest all issues before a court of law. The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence. To ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense.

> * * * Only recently the Court restated the ancient proposition of law, albeit in the context of a grand jury inquiry rather than a trial,

>> "that 'the public ... has a right to every man's evidence,' except for those persons protected by a constitutional, common-law, or statutory privilege * * *."

> * * * [E]xceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth. [Footnote reference omitted.] * * *

*United States v. Nixon* (1974), 418 U.S. 683, 709–710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039, 1064[34], [35], 1065.

" * * * [A] citizen of the United States [is] chargeable with knowledge of the law under which his attendance as a witness could be required. It was sufficient that the subpoena [ ] required his attendance to testify on behalf of the United States at the time and place stated. * * * It was the duty of the [person thus summoned] to respond to the subpoena and to remain in attendance until excused by the court or by the Government's representatives. * * *" *Blackmer v. United States, supra,* 284 U.S. at 442–443, 52 S.Ct. at 256, 76 L.Ed. at 385–386 (construing 28 U.S.C. § 655, the former statute which has now been replaced (with slightly different language) by Rule 17, *supra* ); *see also United States v. Snyder,* C.A. 9th (1969), 413 F.2d 288, 289[1] ("Witness who receives subpoena is under continuing duty to remain in attendance until excused by the court or by the district attorney. Fed.Rules Crim.Proc. rule 17, 18 U.S.C.A."), certiorari denied (1969), 396 U.S. 907, 90 S.Ct. 223, 24 L.Ed.2d 183.

Despite being required by subpoena to attend on February 22, 1982, for the purpose of testifying on behalf of the United States herein, the witness Mr. Butcher, Jr. failed without adequate excuse to obey the command at the time and place stated therein; he was not excused therefrom by this Court, and it was announced in open court on that date by an assistant prosecuting attorney that, of all the many witnesses upon whom subpoenas had been served herein, Mr. Butcher, Jr. was the only person who had not attended. Obviously, then, he was not excused by the United States attorney's representative assigned to prosecute this action.

" * * * Failure by the person without adequate excuse to obey a subpoena served upon him may be deemed a contempt of the court from which the subpoena issued * *." Rule 17(g), Federal Rules of Criminal Procedure; *United States v. New York Telephone Co.* (1977), 434 U.S. 159, 175, n. 24, 98 S.Ct. 364, 374, n. 24, 54 L.Ed.2d 376, 391–392, n. 24[14b] (" * * * The concept that citizens have a duty to assist in enforcement of the law is at least in part the predicate of Fed.Rule Crim.Proc. 17, which clearly contemplates power in the district courts to issue subpoenas duces tecum to nonparty witnesses and to hold noncomplying nonparty witnesses in contempt. * * "); *accord: Nilva v. United States* (1957), 352

U.S. 385, 389, n. 5, 77 S.Ct. 431, 434, n. 5, 1 L.Ed.2d 415, 420, n. 5 ("Authority to prosecute for criminal contempt is found in Rule 17(g), Federal Rules of Criminal Procedure, and 18 U.S.C. § 401(3).")

■ There is a " * * * sacred obligation of courts to preserve their right to discharge their duties free from unlawful and unworthy influences, and, in so doing, if needs be, to clear from the pathway leading to the performance of this great duty all unwarranted attempts to pervert, obstruct, or distort judgment. * * * " *Toledo Newspaper Co. v. United States* (1918), 247 U.S. 402, 416, 38 S.Ct. 560, 563, 62 L.Ed. 1186, 1192. An unwarranted attempt to obstruct a court in the performance of its duty to do justice by a witness' failing to obey a lawful subpoena is met with an exercise judicially of the power constitutionally to punish for contempt. *Ex Parte Hudgins* (1919), 349 U.S. 378, 383, 39 S.Ct. 337, 339, 63 L.Ed. 656, 658 (The "great and only purpose [of the exercise of the power to punish for contempt] is to secure judicial authority from obstruction in the performance of its duties to the end that means appropriate for the preservation and enforcement of the Constitution may be secured.")

" * * * Testimonial compulsion is an intensely practical matter. * * * " *United States v. Bryan* (1950), 339 U.S. 323, 332, 70 S.Ct. 724, 731, 94 L.Ed. 884, 891. That is evident in the current situation in which the defendant Mr. Joe Sam Williams, when this matter was called for trial, announced through his attorney that he wished to change his pleas from not guilty to guilty on counts 1 and 2 of the information against him herein.

There was no semblance of certainty that the proffered guilty pleas of the defendant herein would ever mature into accepted pleas of guilty or that the prosecution would not continue on the other counts. Out of a just consideration for persons accused of crime, this Court is careful to an extreme degree that no plea of guilty will

be accepted unless it is made voluntarily by the accused person after proper advice and full understanding of the consequences. *Garner v. United States*, D.C.Tenn. (1968), civil action no. 881, Winchester Division.

In the exercise of that care, the Court declined to accept Mr. Williams' counsel's oral announcement of the aforementioned changes in a part of his pleas. Thereupon, he filed a formal petition in writing asking the Court so to do.

The Court had Mr. Williams placed under oath for the purposes of that petition, and he was addressed personally by the Court in open court concerning the voluntariness of each of his changed-pleas and his full understanding of the consequences. The attorney for Mr. Williams recommended the acceptance of those pleas, but the Court did not accept and enter them until satisfied that they were voluntary and not the result of force or threats or of promises, Rule 11(d), Federal Rules of Criminal Procedure; and, for a subsequent recitation by the assistant prosecuting attorney in detail and clarifications relating thereto from the defendant and counsel, a satisfaction that there were factual bases for each such plea. Rule 11(f), Federal Rules of Criminal Procedure.

All the while that the Court was indulging this care in considering the defendant's petition, the prospective jurors were outside the courtroom, so that the trial could proceed without prejudice in the event either plea was not accepted or entries of nolle prosequi were not allowed as to the remainder of the outstanding counts. Had the Court not been satisfied beyond all reasonable doubt as to these considerations, trial would have continued—patently in the absence of Mr. Butcher, Jr.

Much of the legal literature relating to the elements of contempt of court for the deliberate and intentional disobedience of a subpoena relate to decisions emanating from disobediences of subpoenas duces tecum.[4] It has been stated that the elements of that contempt are:

4. For the past 2 decades, it has been a rare thing indeed for any person to whom a subpoe-

na *ad testificandum* has been issued by this

(1) that the Court issued an order for the production at a particular time and place of a record adequately described in the order, (2) that the defendant was served with (or otherwise knew of) the order, (3) that the record existed at the time the order was served, (4) that the defendant had control (or lawful power to acquire control) of the record, (5) that the defendant failed to produce (or cause the production of) the record, and (6) that the defendant acted willfully.

*Goldfine v. United States,* C.A. 1st (1959), 268 F.2d 941, 945[2], certiorari denied (1966), 363 U.S. 842, 80 S.Ct. 1608, 4 L.Ed.2d 1721. Nonetheless: " * * * With appropriate modifications these same elements of proof are required if the failure was to comply with a subpoena ad testificandum. * * * " 1 Wright, Federal Practice and Procedure: Criminal, 568, § 279.

The Court was advised informally by the United States attorney of this District prior to March 18, *supra,* that he had been contacted by Lewis S. Howard, Esq., an attorney-at-law (who apparently represented Mr. Butcher, Jr. in the matter of deciding whether the latter would honor or disregard the clear and solemn mandate of the aforementioned subpoena), and that such attorney was advising such attorney for the Government by letter of the reason(s) for the absence of such subpoenaed witness. That letter of February 24, 1982 was exhibited herein on March 18; its gist is that such attorney-at-law had " * * * indicated * * * " to Mr. Butcher, Jr. that " * * * there would be no need for his [Mr. Butcher's] appearance in my [that attorney's] opinion because of the pending guilty plea. * * * "

" * * * Reliance upon advice of counsel that a subpoena duces tecum not be obeyed * * * does not excuse disobedience. * * " *Taylor v. United States,* C.A. 6th (1955), 221 F.2d 809, 810[2], certiorari denied (1955), 350 U.S. 834, 76 S.Ct. 69, 100 L.Ed. 744, cited *inter alia* in *United States v. Snyder, supra.* " * * * It is the duty of an attor-

ney-at-law to advise his client and preserve his rights to the best of his understanding, but compelling legal reason and genuine apprehension of irreparable loss of rights *only* [emphasis added by this writer] would justify advice to disregard the clear and solemn mandate for attendance [at a trial or before a grand jury] issued out of a court of competent jurisdiction. * * * " *In re Chilcote Co.,* D.C. Ohio (1949), 9 F.R.D. 571, 573[2], affirmed *sub nom. A.A. Chilcote v. United States,* C.A. 6th (1949), 177 F.2d 375, citing *Wilson v. United States* (1911), 221 U.S. 361, 374, 31 S.Ct. 538, 541, 55 L.Ed. 771, 776 (headnote 6) (" * * * [I]t would have been open to the party for whom he was called to make an application to the court * * * to punish him for his contempt in not producing the document in obedience to such subpoena. * * * ")

The United States attorney chose not to make such an application to this Court in this instance; this was a proper exercise of his discretion. *Peek v. Mitchell,* C.A. 6th (1970), 419 F.2d 575, 577 (" * * * '[T]he attorney for the United States is an * * * executive official of the Government, and it is as an officer of the executive department that he exercises a discretion as to whether or not there shall be a prosecution in a particular case.' * * * ") The matter, however, cannot be allowed to rest there.

This Court and all other courts " * * * are the special guardians * * * " of the " * * * just administration of criminal justice * * * ." *Campbell v. United States* (1961), 365 U.S. 85, 92, 81 S.Ct. 421, 425, 5 L.Ed.2d 428, 435 (headnote 2). " * * * 'It becomes the duty of the judge to take affirmative action when the lawful commands of the court are defied' * * * ." *MacNeil v. United States,* C.A. 1st (1956), 236 F.2d 149, 153[4], certiorari denied (1956), 352 U.S. 912, 77 S.Ct. 150, 1 L.Ed.2d 119.

█ This is not to adjudicate that Mr. Butcher, Jr. must be punished by fine or imprisonment for his disobedient failure, to vindicate the authority of this Court.[5]

---

Court, and which has been served timely, to fail to obey it.

**5.** Good-faith on the part of a disobedient witness may be taken into consideration as a miti-

" * * * [T]here is a duty on the part of federal district judges not to exercise the criminal contempt power without first having considered the feasibility of the alternatives at hand. * * * " *Brown v. United States* (1958), 356 U.S. 148, 163, 78 S.Ct. 622, 631, 2 L.Ed.2d 589, 601–602 (headnotes 12, 22, from separate dissenting opinion of Justice Brennan), rehearing denied (1958), 356 U.S. 948, 78 S.Ct. 776, 2 L.Ed.2d 822.

■ A separate proceeding, to be entitled *In re C.H. Butcher, Jr.,* respondent, ordering such witness to appear personally and show any cause why he should not be cited for the criminal contempt of this Court, would appear to be a feasible alternative. *Cf. Gompers v. Buck's Stove & R. Co.* (1911), 221 U.S. 418, 446, 31 S.Ct. 492, 500, 55 L.Ed. 797, 807 ("[T]o vindicate the authority of the court, with the public on one side and the defendant [ ] on the other * * *.") This would enable the Court to hear any " * * * protestations of good faith * * * " by Mr. Butcher, Jr. and allow this Court, rather than the United States attorney, to be " * * * the judge of his credibility and of the weight to be given his testimony. * * * " *Nilva v. United States, supra,* 352 U.S. at 395, 77 S.Ct. at 437, 1 L.Ed.2d at 423 (headnote 4).

This alternative would preserve the absolute power of the United States attorney in choosing whether to prosecute, not to prosecute, or abandon a prosecution already started and yet enable this Court to exercise its guardianship role, *supra.* The Court understands it would then become the duty of the United States attorney to appear and vindicate the Government's authority as embodied in this Court. *Cf. Phillips S. & T.P. Co. v. Amalgamated Ass'n of I., S. & T.W.,* D.C.Ohio (1913), 208 F. 335, 344.

Accordingly, the United States attorney of this District is requested and directed to make application in a separate proceeding for such an order.

gating factor. *United States v. Goldfarb,* C.C.A.2d (1948), 167 F.2d 735[2]; *In re Chilcote Co., supra,* 9 F.R.D. at 573[2] ("Failure to respond to subpoena duces tecum could not be excused on the ground that such action was taken on advice of counsel although that fact could be considered in mitigation.")