UNITED STATES of America,
Plaintiff-Appellant,

v.

Ricardo R. GARCIA,
Defendant-Appellee.

UNITED STATES of America,
Plaintiff-Appellant,

v.

Antonio G. CARDENAS, Jr.,
Defendant-Appellee.

Nos. 83–3092, 83–3093.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 5, 1984.

Decided Jan. 14, 1985.

---

Robert S. Linnell, Asst. U.S. Atty., Yakima, Wash., Sara Criscitelli, Washington, D.C., for plaintiff-appellant.

Walter Curnutt, Michael E. Schwab, Yakima, Wash., for defendants-appellees.

Before BROWNING, Chief Judge, CANBY, Circuit Judge, and CROCKER *, District Judge.

_____

* Honorable M.D. Crocker, Senior Judge, United States District Court for the Eastern District of California, sitting by designation.

**1.** CETA has since been repealed, Pub.L. No. 97–300, Title I, § 184(a)(1), 96 Stat. 1357 (1982),

PER CURIAM:

The district court dismissed an indictment for "willfully misappl[ying]" funds obtained under the Comprehensive Employment and Training Act [CETA], 29 U.S.C. § 801–999 (1976 & Supp. IV 1980),[1] in violation of 18 U.S.C. § 665 (1976), because the government conceded it could not prove intent to injure or defraud the United States. We affirm.

## I.

Appellees are directors of Northwest Rural Opportunities [NRO], a private, non-profit organization. NRO is a grantee under Title III of CETA providing social services under contract with the Department of Labor. In late 1980 the owner of the building NRO rented as a site for training migrant and seasonal farmworkers informed appellees the building could no longer be rented and offered NRO an option to purchase. The contract between the Department and NRO required NRO to obtain the Department's approval before acquiring property for more than $300.00. Appellees used $32,000 of CETA funds, earmarked for "space," to place a down payment on the building without obtaining prior approval.

Appellees were indicted for "willfully misapplying" the $32,000 in violation of 18 U.S.C. § 665(a). Appellees moved to dismiss because the indictment did not allege appellees had converted the funds to their own use or benefit. The government argued that benefit to a third party—here NRO—was sufficient. The district court agreed.

After denying the motion to dismiss, the district court's memorandum order went on to note: "[t]here is not even a hint that [appellees] either sought or realized any personal gain, nor is it contested acquisi-

and in many respects replaced by the Jobs Training Partnership Act, Pub.L. No. 97–300, 96 Stat. 1324 (1982), codified at 29 U.S.C. § 1501–1781.

tion of the subject property was designed to implement the efficient administration of CETA training functions." The court advised counsel that the court was "inclined" to rule that willful misapplication requires willful conversion with intent to defraud. Counsel was told to anticipate instructions that the government must demonstrate "some measure of harm, injury, or deprivation." The court suggested that loss by the government of control of its funds might constitute sufficient deprivation, but that the government in addition must show defendants "intended some measure of injury."

The government filed a response to the court's memorandum order. The government asserted that "willful misapplication" did not require a specific intent to injure or defraud, and that the government "would not be able to produce any" evidence suggesting "a specific intent on behalf of the Defendants to injure the United States," but only evidence that appellants "knowingly and willfully" paid the down payment "with the knowledge that they were in violation of NRO's contract with the Department of Labor." Relying on the government's assertion, the district court dismissed the indictment.

■ CETA contains no prohibition against using grant money to purchase space or for other capital expenditures necessary to carry out CETA functions. The regulations governing the grant of funds to NRO do not require prior approval for capital expenditures. *See* 29 C.F.R. §§ 97.-210–97.280, 98.1–98.29a (1980).[2] It is only NRO's operating contract with CETA that provides that NRO must obtain CETA's approval before using CETA funds to purchase capital items over $300. The government argues that use of funds in knowing violation of this contract provision is sufficient to constitute willful misapplication because it deprives CETA of the power to control the expenditure of its funds. We

hold, with the district court, that the government must prove defendants intended not merely to deprive the government of control over the expenditure of funds, but also to injure or defraud the United States. The simple intent to use funds in a manner not fully in compliance with contract procedures is not alone sufficient.

## II.

In *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), the Supreme Court construed a similar statute, 18 U.S.C. § 641, which provides for punishment as a felon of "[w]hoever embezzles, steals, purloins, or knowingly converts" property of the United States. The Court held that in this context to "knowingly convert" required an intention *"wrongfully* to deprive another of possession of property." *Id.* at 276, 72 S.Ct. at 256 (emphasis in original).

■ In a criminal statute, "willfully" generally means a voluntary, intentional violation of a known legal duty in bad faith or with evil purpose. *See United States v. Pomponio*, 429 U.S. 10, 11–12, 97 S.Ct. 22, 23–24, 50 L.Ed.2d 12 (1976) (per curiam); *United States v. Bishop*, 412 U.S. 346, 360, 93 S.Ct. 2008, 2017, 36 L.Ed.2d 941 (1973). A general intent to commit the proscribed act is not enough; a specific intent to do something the law forbids is required. *See United States v. Wilson*, 631 F.2d 118, 119 (9th Cir.1980). The definition of "misapplication" suggests a similar element: "[i]mproper, illegal, wrongful, or corrupt use [or] application of funds, property, etc." Black's Law Dictionary 901 (5th Ed. 1979).

The term "willfully misapply" in 18 U.S.C. § 665(a) is embedded in a series of words referring to harmful or wrongful acts clearly causing financial injury to the United States or impeding the achievement

---

**2.** Section 97.255(f)(6)(ii) lists "office space costs" as allowable administrative costs. 29 C.F.R. § 97.255(c) forbids the expenditure of funds for *new* construction, but the building involved here was old. Section 97.-

213(b)(3)(i)(E) requires a grantee to provide an "itemized budget of allowable costs, as defined in §§ 97.255 and 260" in its funding request, but no issue is made that NRO failed to comply with this requirement.

of CETA's goals.[3] *Cf. Morissette,* 342 U.S. at 265–70, 72 S.Ct. at 250–54 (construing 18 U.S.C. § 641). All the acts prohibited by the statute are more serious in character than simple violations of procedural requirements.

On its face, the primary thrust of section 665 is the punishment of theft, embezzlement, or fraudulent conversion of CETA funds. The legislative history indicates that Congress intended these criminal provisions to reach embezzlement and obstruction of CETA investigations and "kickbacks and similar schemes." *See* S.Rep. No. 891, 95th Cong., 2d Sess. 42–44, *reprinted in* 1978 U.S.Code Cong. & Admin.News 4522–23. Thus, the offenses specifically identified on the face of the statute and those that concerned Congress differ in kind from the procedural violation charged here.

CETA grants the Secretary of Labor extensive administrative authority to take corrective action if any provision of the statute or regulations is violated. "If the Secretary concludes that any recipient of funds under this Act is failing to comply with any provision of this Act or the regulations under this Act ... the Secretary shall have authority to terminate or suspend financial assistance in whole or in part and order such sanctions or corrective actions as are appropriate." *See* CETA Amendments of 1978, Section 106, 92 Stat. 1909, 1927 (1978) (repealed 1982) (previously codified at 29 U.S.C. § 816(d)). This broad and flexible administrative authority to deal with administrative violations makes it unlikely that Congress in prohibiting "willful misappli[cation]" of funds in 18 U.S.C. § 665 intended to punish as felonies all departures from contract procedures in the funding process, however harmless and routine.[4]

### III.

In concluding that section 665 requires a specific intent to injure or defraud the United States, the district court relied on the interpretation of the similarly-worded bank fraud statute, 18 U.S.C. § 656.[5] *See, e.g., United States v. Dreitzler,* 577 F.2d 539, 548 (9th Cir.1978). The government argues the analogy is not compelling because precodification versions of section 656 explicitly required an intent to injure or defraud the bank, and the codifiers disclaimed any intention of changing the law. *See* S.Rep. No. 1620, 80th Cong., 2d Sess., 3, 4, *reprinted in* 1948 U.S.Code Cong. Serv. 2429–30 (Title 18 United States Code, Crimes and Criminal Procedure). But this circumstance cuts against the government's reading of the statute. The only reason Congress could have considered the explicit requirement of a purpose to injure or defraud redundant was that Congress understood the term "willful misapplication" to include such an intent by implication.

The few opinions that have construed section 665 suggest that to willfully misapply funds requires more than the intent to use the funds without prior approval. The defendants in *United States v. Tamargo,*

---

**3.** In 1980, 18 U.S.C. § 665(a) provided:
Whoever, being an officer [or] director ... of ... any agency receiving financial assistance under the Comprehensive Employment and Training Act knowingly hires an ineligible individual or individuals, embezzles, willfully misapplies, steals, or obtains by fraud any of the moneys, funds, assets, or property which are the subject of a grant or contract of assistance pursuant to such Act shall be fined not more than $10,000 or imprisoned for not more than 2 years, or both, ....
The 1982 amendments to this section did not alter its substance.

**4.** Appellees offered to prove at trial that it was standard practice to request approval to make purchases from the Department of Labor, re-

ceive no response, procure the required item without prior approval, and obtain post hoc approval despite the procedural violation following the annual audit.

This is not to say a violation of administrative regulations or contract provisions may not constitute a violation of the Act *if accompanied by the specific intent to injure or defraud. See United States v. Christo,* 614 F.2d 486, 490 (5th Cir.1980) (under 18 U.S.C. § 656).

**5.** 18 U.S.C. § 656 provides:
Whoever, being an officer ... of ... any bank, ... embezzles, obstructs, purloins or willfully misapplies any of the moneys, funds or credits of such bank ... shall be fined ... or imprisoned ....

637 F.2d 346 (5th Cir.1981), were convicted of willfully misapplying CETA funds to pay the salaries of their employees even though no training services were provided, and for periods far longer than reasonable for training purposes. In rejecting a constitutional vagueness challenge to the term "willfully misapplies," the court approved the trial court's instruction defining the offense to require a conversion or taking "with intent to defraud." *Id.* at 350. *See also United States v. Pappas,* 611 F.2d 399, 404 (1st Cir.1979) ("[T]he question ... is ... whether a jury could reasonably find that [the facts] indicated dishonesty beyond a reasonable doubt.").

### IV.

The government having conceded a specific intent to injure or defraud the United States cannot be proven, an essential element of the offense under 18 U.S.C. § 665 is lacking. Dismissal of the indictment is therefore AFFIRMED.