**A–CAL COPIERS, INC., Plaintiff,**

v.

**NORTH AMERICAN VAN LINES, INC., Defendant.**

Civ.A. No. 96–12496–JLA.

United States District Court, D. Massachusetts.

July 24, 1998.

Anthony R. Caliendo, Arlington, MA, David T. DeCelles, Arlington, MA, for Plaintiff.

Wesley Chused, Looney & Grossman, Boston, MA, for Defendant.

---

ORDER ON *Plaintiff's' Motion for Reconsideration of Contempt Order Against David Hvizda; Plaintiff's Motion for Judgment as a Matter of Law—New Trial and/or Amendment of Judgment; Plaintiff's Motion for Directed Verdict; Plaintiff's Motion for Directed Verdict as to Damages; Defendant's Bill of Costs*

ALEXANDER, United States Magistrate Judge.

Parties appeared before this Court for a trial. Attorneys DeCelles and Caliendo appeared on behalf of Plaintiff and Attorney Chused appeared on behalf of Defendant. After four days of testimony and presentation of evidence, the jury found Defendant not liable for the damages Plaintiff allegedly suffered as a result of receiving three irreparable used photocopiers. This Court entered judgment for Defendant on March 27, 1998.

Through the present litany of motions, Plaintiff has tried the tethers that assure tempered adjudication. Ultimately, however, it is Plaintiff's clear misstatements of law, mischaracterizations of fact, and repeated attempts to now introduce excluded evidence that guarantee steadfast restraint. In short, while Plaintiff's motions are prime candidates for summary disposition, this Court addresses some of the salient issues for the purpose of finality before this Court.

■ This Court first addresses Plaintiff's Motion for Reconsideration of this Court's denial of Plaintiff's Motion for Contempt against David Hvizda. During the trial, Plaintiff sought to call David Hvizda as a witness. Mr. Hvizda was properly served a valid subpoena pursuant to Federal Rule of Civil Procedure 45 on February 23, 1998 ordering him to appear on March 16, 1998. Mr. Hvizda did appear on March 16, 1998 during the parties' opening arguments. Due to close of the first day trial session, Plaintiff was not able to begin its case-in-chief. Plaintiff apparently requested that Mr. Hvizda appear on March 17, 1998; a request to which Mr. Hvizda objected.[1] Because of Mr. Hvizda's apparent reluctance to appear on

---

1. The request and Mr. Hvizda's objection were not made in the presence of this Court. Both were disclosed to this Court by Plaintiff's counsel.

any of the subsequent dates reserved for trial, Plaintiff requested this Court to issue an order to compel Mr. Hvizda's appearance. This Court denied Plaintiff's request and recommended that Plaintiff serve Mr. Hvizda with a new subpoena for his appearance on any of the other dates reserved for trial.

According to Plaintiff, the Hillsboro County Sheriffs Department and an individual, Gregory Tarbox, attempted without success to re-serve Mr. Hvizda. The second subpoena, dated March 17, 1998, requested Mr. Hvizda's appearance on March 18, 1998. Mr. Hvizda did not appear at any other time during the course of the trial except for March 16, 1998, the date specified on the first subpoena. Plaintiff then filed a motion for contempt against Mr. Hvizda which this Court denied.

The rationale for this Court's denial of Plaintiff's motion for contempt is stated within its "ORDER ON *Plaintiff's Motion for Contempt Order Against David Hvizda*" dated April 13, 1998. Plaintiff does not identify new facts or new law for this Court to consider relative to its present motion; nor has Plaintiff identified any prejudice it suffered due to Mr. Hvizda's absence. That is, the jury found the Defendant not liable for the damages Plaintiff allegedly incurred. Mr. Hvizda's testimony, as a mere authentication of the MTI report,[2] would be relevant only to issues of damages and condition at the point of destination. Even given both of these factors, Plaintiff still failed to show good origin condition. *See infra* at 187. Accordingly, due to the reasons stated in this Court's April 13, 1998 order[3] and the fact that Plaintiff was not prejudiced by Mr. Hvizda's absence, Plaintiff's motion for reconsideration is hereby DENIED.

■ Plaintiff also moves this Court for "Judgment as a Matter of Law—New Trial And/Or Amendment of Judgment." Rule 50

of the Federal Rules of Civil Procedure provides the following:

(a) . . .

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

. . .

(b) . . . The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment. . . .

Fed.R.Civ.P. 50. This Court can grant a judgment as a matter of law if no reasonable jury could find on behalf of the non-movant. *See Gibson v. City of Cranston,* 37 F.3d 731, 735 (1st Cir.1994) and *Gallagher v. Wilton Enters., Inc.,* 962 F.2d 120, 124–25 (1st Cir. 1992). That is, "if reasonable jurors could differ as to the inferences that may be drawn from the evidence adduced at trial, such a motion should be denied." 9 James W. Moore, *Moore's Federal Practice,* ¶ 50.02[2] at 50–10 to 50–11 (3d ed.1998).

■ At trial, there was conflicting evidence adduced as to whether the photocopiers were in "good condition" upon delivery to Defendant. Although Mitch Woodard "testified"[4] that he plugged in the machines and found that they were able to pass paper, he also testified that (1) the mechanical condition of each machine (prior to and at the time of his inspection) was unknown; (2) the origin conditions noted on Defendant's bill of lading showed that the machines were dented, loose, bent, scratched, and rubbed; (3) there were no documents showing any recon-

---

**2.** During a sidebar conference, Plaintiff stated that Mr. Hvizda's testimony would last less than five minutes and only serve the purpose of authenticating his report.

**3.** The fundamental notion of that Order is that this Court finds it would be improper and unwarranted for Mr. Hvizda to be punished for the error of Plaintiff's counsel in failing to notify this

Court, prior to this Court's discharging the jury, of Plaintiff's desire to have Mr. Hvizda testify on the first day of trial.

**4.** Mitch Woodard did not testify in person. Rather, each party had an opportunity to read pertinent portions of Mr. Woodard's deposition testimony into the record.

ditioning Akita[5] may have done between the time Akita received the machines and the time Defendant received the machines; (4) he had no knowledge of the machines' maintenance history; and (5) there were no documents showing whether any technician tested the machines before they were sold. Further, Manuel Dias, the driver of the North American truck who delivered the machines to Plaintiff's place of business in Billerica, Massachusetts, testified that the machines were strapped and padded in a trailer designed to deliver electronic goods.

Plaintiff attempts to overcome the above by proposing the following statement of law that effectively shifts the burden of proving origin condition from Plaintiff to Defendant:

> ... if the machines were open and visible and not concealed and if the Defendant was not deprived of the opportunity of informing itself of the condition of the machines, it would have an obligation to inform itself of the condition of the machines as a matter of law and its failure to do so would relieve the Plaintiff of its burden of proving 'good condition' at the point of origin.

Pl.'s Mot. at 3 (citing *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013 (11th Cir.1987) and *Missouri Pacific Railroad Co. v. Elmore & Stahl*, 377 U.S. 134, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964)).

Plaintiff's counsel proposed this statement of law numerous times prior to and during the trial. As this Court informed Plaintiff's counsel on those occasions, and as it does so for the final time, this is a misstatement of law relative to the Carmack Amendment, 49 U.S.C. §§ 13501 and 14706. Because this Court has already rejected Plaintiff's proposition and has stated its rationale for doing so, this Court only implores Plaintiff's counsel to reread *Missouri Pacific* (stating plaintiff has the initial burden of establishing a prima facie case which includes showing that the goods were delivered to defendant in

"good condition") as well as *D.P. Apparel Corp. v. Roadway Express, Inc.*, 736 F.2d 1 (1st Cir.1984).

Due to the foregoing, in order to establish a prima facie case, it was Plaintiff's burden to prove by a preponderance of the evidence that Plaintiff delivered the photocopiers to the Defendant in "good condition." Given the testimony of Woodard and Dias, a reasonable jury could find that Plaintiff had not proven "good condition" by a preponderance of the evidence. Accordingly, Defendant's motion for judgment as a matter of law is DENIED.[6]

Plaintiff also moves this Court for a new trial pursuant to Federal Rule of Civil Procedure 59. Rule 59 provides that

> (a) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States....

Fed.R.Civ.P. 59(a).

The decision to grant a motion for a new trial is within the discretion of the trial judge. *Lama v. Borras*, 16 F.3d 473, 477 (1st Cir.1994). The fact that there is evidence supporting the verdict does not preclude granting such a motion. *Id.* Plaintiff raises the conventional gallimaufry of reasons for requesting a new trial: the verdict was against the weight of the evidence, the judgment was improper, and the trial was rendered unfair by various rulings of the court or actions by opposing counsel. 12 *Moore's Federal Practice*, ¶ 59.13, at 59–43.

Though the standard of review for a motion for new trial is different from the standard of review for a motion for judgment as a matter of law, this Court refers to the discussion, *supra*, regarding the weight of the evidence as to good origin condition to

---

**5.** The photocopiers were held by Akita prior to delivery to North American Van Lines, Inc.

**6.** Given this Court's finding that a reasonable jury could find for Defendant on the issue of origin condition, there is no need to examine the other two prongs of Plaintiff's prima facie

case. In addition, this Court considered Plaintiff's motion in light of its affidavits and other submissions notwithstanding their more than questionable admissibility for purposes of the present action. Consequently, Defendant's motion to strike, though well taken, is moot.

note briefly that the verdict was not against the clear weight of the evidence and, therefore, this contention fails as a potential ground for granting Plaintiff's motion.

■ Plaintiff also contends that opposing counsel's use of the phrase "junk in—junk out" to describe the photocopiers prejudiced Plaintiff and confused the jury because there was no expert to testify that the photocopiers were, in fact, "junk" at the point of origin, as that word is described in Webster's Dictionary. Whether a new trial is warranted based on the misconduct of counsel depends on whether it is reasonably probable that the verdict was influenced by that misconduct. *See Fineman v. Armstrong World Indus.*, 980 F.2d 171, 206–07 (3rd Cir.1992).

■ Clearly, in order for the test to even be applied, an attorney must engage in some form of misconduct. Though courts police the bounds of appropriate attorney conduct, it would be stretching to say the least if a court was placed in the position of denying an attorney the use of common phrases and expressions in his or her argument. This Court finds no inappropriate behavior in Attorney Chused's use of the term "junk"; a priori, this cannot be the ground for a finding of prejudice against the Plaintiff and a ground for a new trial. *See* 12 *Moore's Federal Practice*, ¶ 59.13[2][c][i][A], at 59–58 to 59–49 ("As a general rule, the movant must establish that the conduct complained of constitutes misconduct (and not mere aggressive advocacy) and that the misconduct is prejudicial in the context of the entire trial record."). Furthermore, this Court instructed the jury at the start of the trial that statements of counsel were not to be considered evidence. Consequently, Plaintiff's asseveration as to Attorney Chused's prejudicial statement does not warrant a new trial.

Finally, Plaintiff contends a new trial is warranted because of this Court's rulings as to (1) Plaintiff's proposed jury instructions as to which party had the burden of showing good condition at the point of origin; (2) the inadmissibility of four pieces of evidence Plaintiff sought to introduce; (3) this Court's jury instruction that the jury could find Defendant's liability to be less than the stated value of $5 per pound if the jury determined

that the machines were worth less than the stated value; (4) Plaintiff's request for the jury to view the photocopiers at Plaintiff's place of business in Billerica, Massachusetts; and (5) allowing Defendant to introduce a photograph of the truck used to deliver the photocopiers to Plaintiff's place of business. This Court discusses each seriatim.

First, Plaintiff once again argues, citing *Offshore Aviation* and *Missouri Pacific,* that it was Defendant's burden to establish the good condition of the photocopiers at the point of origin because the machines were allegedly "open and visible." This point warrants no further discussion.

■ Second, Plaintiff contends that this Court's decisions not to allow Plaintiff to admit (a) "The Locator", a trade journal that advertised a photocopier similar to the subject photocopiers at a value of $6,900.00; (b) a 1996 Spring Edition of the "Minella Copy Guide", a trade publication that depicted a new photocopier similar to the subject photocopiers as having a value of $42,000.00; (c) photographs of the subject photocopiers that were taken one week before trial; and (d) an inspection report written by David Hvizda of MTI were prejudicial error warranting a new trial.

This Court first discusses the admissibility of both "The Locator" and the "Minella Copy Guide." Both of these publications are hearsay and Plaintiff sought their admission for the truth of the matter asserted—i.e., the value of the photocopiers. *See generally* Fed.R.Evid. 801(c) (defining hearsay as an out of court statement "offered in evidence to prove the truth of the matter asserted"). *See also Coyne v. Taber Partners I,* 53 F.3d 454, 461 n. 6 (1st Cir.1995) (admitting newspaper article for the limited purpose of establishing that the defendant knew or should have known of the volatile nature of a labor protest); *Price v. Rochford,* 947 F.2d 829, 833 (7th Cir.1991) (deeming newspaper articles admissible because plaintiff "did not offer the articles to prove that he was in bankruptcy, only that he was reported to have been in bankruptcy") (emphasis removed).

"The Locator" depicted photocopiers that were not listed as "dented", "rubbed", "bent", or "scratched". The listed price of $6,900.00 greatly differed from the $1663.00 Plaintiff paid for the subject photocopiers. In addition, the mechanical operation of the machines listed in "The Locator" was at least generally known. Clearly, the listed photocopiers were not sufficiently similar to the subject photocopiers to allow admission. The argument has even greater force relative to Plaintiff's attempt to introduce the "Minella Copy Guide" because the photocopiers shown therein were *brand new*. Accordingly, this Court finds no error in denying Plaintiff's request to submit the trade publications.

■ Plaintiff also sought to admit photographs of the subject photocopiers taken one week before trial. Plaintiff had more than ample opportunity to photograph the machines during discovery so that Defendant could examine the photographs and raise any objections thereto so that the court could resolve any disputes well in advance of trial. It confounds this Court to understand why Plaintiff waited until one week before trial to take these photographs - at best, they depict used photocopiers that have been sitting in Plaintiff's warehouse for quite some time. As a result, their condition now may not even be the same as their condition upon delivery. Moreover, the photographs, even if taken immediately after delivery, would show the condition of the photocopiers upon delivery, not at the point of origin. Even if this Court determined that the photographs would raise an issue regarding condition at destination, this alone would not suffice to warrant a new trial.

■ Finally, Plaintiff contends that this Court erred in not admitting the MTI report signed by David Hvizda. This matter, much like the others Plaintiff has raised herein, was discussed at great length at conferences prior to and during the trial. The report, without Mr. Hvizda's testimony, is an out of court statement that Plaintiff sought to admit for the truth of the matter asserted. Accordingly, it was properly found inadmissible unless it falls within a hearsay exception or is not hearsay at all. Plaintiff attempts to ar-

gue the latter by invoking Rule 801(d)(2)(C): "a statement by a person authorized by the party to make a statement concerning the subject." Fed.R.Evid. 801(d)(2)(C).

In *Sabel v. Mead Johnson*, 737 F.Supp. 135 (D.Mass.1990), the court stated that "[a]dmissibility under [801(d)(2)(C) and (D) ] is governed not by the trustworthiness of the statement, but by the existence and scope of the principal-agent relationship as determined under the common law of agency." *Id.* at 138. After stating that courts look "primarily at the issue of control in determining whether an agency relationship exists[,]" *id.*, the court went on to hold that neither financing a discussion nor providing the factual information thereof is sufficient to warrant a finding of control and, therefore, invoking 801(d)(2)(C). *Id.* at 139. Rather, the court stated that there was "no evidence ... that [defendant's] employees sought to foreclose avenues of inquiry or to prevent the expression of potentially damaging ideas." *Id.*

Similarly, though Defendant hired MTI to produce a report regarding the photocopiers, this alone does not evidence the existence of an agency relationship since there is no showing of control over MTI's investigation; nor does it establish Plaintiff's implicit contention that Defendant specifically authorized MTI, viz. David Hvizda, to speak on its behalf on the issue of liability or of damages. Therefore, the MTI report does not fall under the protective umbrella of either 801(d)(2)(C) or (D) and was properly excluded.

■ Third, Plaintiff contends that this Court erred by instructing the jury that if they found Defendant liable, they may find that liability to be less that the $5.00 per pound that was the stated value on the bill of lading (in this case that amount was approximately $13,000.00). For example, if the jury found the machines to be worth only $5,000.00, it could award that amount instead of the full $13,000.00. Plaintiff now contends that the jury would not be allowed to award less than the stated value. This, as is all too common with Plaintiff's submissions to this Court, is an incorrect statement of law. The

jury may award any damages it feels are warranted under the circumstances up to and including the total amount for the stated value.

■ Finally, this Court addresses Plaintiff's last two assertions. Immediately prior to the start of the trial, Plaintiff requested that the Court arrange for the jurors to be transported to Plaintiff's warehouse where the photocopiers were stored; or, in the alternative that Plaintiff be allowed to bring the photocopiers into the court for jurors to inspect. This Court denied both motions as unnecessarily costly and burdensome. First, Plaintiff could have made these requests well before the beginning of trial so that proper arrangements could have been made to minimize costs and other constraints; and second, Plaintiff was not prejudiced by the jurors inability to view the photocopiers first hand. All such a showing would reveal is the condition of the photocopiers some time after they had arrived at the point of destination. That is, the copiers give no indication as to their condition at the point of origin. Accordingly, even assuming first-hand inspection, Plaintiff would still fail to establish a necessary prong of its prima facie case.

■ Plaintiff asseverates that it was error for this Court to allow Defendant to introduce a photograph of the truck that was used to deliver the photocopiers to Plaintiff's place of business because the photograph was taken during the trial. The appearance of the truck became relevant when, during the trial, there was a discrepancy between the way Mr. Dias and Robert Caliendo described the way the truck's door opened. It was not known prior to the start of trial that the issue would arise; it became relevant relative to what each party could see of the photocopiers upon their delivery and also as to the parties' respective memories of what exactly transpired on the date of delivery. Accordingly, the photograph was properly admitted.

As a result of the foregoing, Plaintiff's Motion for a New Trial is hereby DENIED.

■ Plaintiff also moves this Court for directed verdict as to damages in the amount of twenty-one thousand dollars ($21,000.00).

Plaintiff arrives at the $21,000.00 amount because Plaintiff claims that it costs $7,000.00 to replace each of the three machines. This court may grant a motion to alter judgment in one of the following circumstances: (1) To account for an intervening change in controlling law; (2) To account for newly discovered evidence; (3) To correct clear legal error; or (4) To prevent manifest injustice. *See* supra 12 *Moore's Federal Practice*, ¶ 59.30[5][a][i], at 59–103; *see also F.D.I.C. v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir.1992). Because this Court finds that Plaintiff has not met its burden of showing that any of these four circumstances are extant here, Plaintiff's motion to amend judgment is hereby DENIED.

Defendant moves this Court for costs associated with the deposition of Mitch Woodard and the testimony of Richard R. Panning. Costs associated with a trial are governed by Federal Rules of Civil Procedure 54(d) which provides that "costs . . . shall be allowed as of course to the prevailing party unless the court otherwise directs. . . ." Rule 54(d), in turn, cannot be stretched beyond the parameters defined in 28 U.S.C. § 1920 which lists allowable costs. These include

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, costs of special interpretation services under 1828 of this title.

28 U.S.C. § 1920 (1997). The effect of Rule 54 being read in light of § 1920 is that

§ 1920 has an esemplastic effect. It fills the void resulting from Rule 54(d)'s failure to define the terms 'costs' . . . and in that way constrains the district court's power to determine which expense categories constitute taxable costs. In other words, the

statute and rule, read together, signify that a district court lacks the ability to assess 'costs' under Rule 54(d) above and beyond those that come within the statutory litany.

*In re Two Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litigation,* 994 F.2d 956, 962 (1st Cir.1993).

■ Accordingly, a court's discretion in denying statutory costs to the prevailing party is limited. As a result, there is a strong presumption that a request for costs will be granted. *See Delta Air Lines, Inc. v. August,* 450 U.S. 346, 352, 101 S.Ct. 1146, 67 L.Ed.2d 287 (1981) ("prevailing plaintiffs presumptively will obtain costs under Rule 54(d)"); *see also In re Two Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litigation,* 994 F.2d 956, 962 (1st Cir.1993) ("We further believe that this negative discretion—the power to deny recovery of costs that are categorically eligible for taxation under Rule 54(d)—operates in the long shadow of a background presumption favoring cost recovery for prevailing parties.").

■ The losing party may overcome this presumption by showing that an award of costs would be inequitable in the extant circumstances. *See 10 Moore's Federal Practice,* ¶ 54.101[01][1][b] at 54–151 (citing cases). A party makes a showing of inequity if the party shows that the expenses incurred by the prevailing party were either unreasonable or unnecessary; that the prevailing party engaged in some misconduct; or that the prevailing party's motion for costs is subject to some procedural defect such as failure to abide by a local rule in some manner. *Id.* at 54–153.

■ This court first addresses the costs incurred as a result of deposing Mitch Woodard. In order to avoid traveling to New York, the parties agreed to split the costs associated with Mr. Woodard's deposition in-

cluding travel expenses and reporter fees. At issue is the $650.00 Defendant paid as its share of Mr. Woodard's travel expenses.[7] Plaintiff claims that it would be unfair to force Plaintiff to absorb the total cost of the Woodard deposition in light of the savings both parties enjoyed from having Mr. Woodard come to Boston rather than forcing the parties to go to New York.[8] While the savings to Defendant for sharing the expense is not very relevant here, the fact that an agreement existed between the parties is. Accordingly, Defendant's motion for its share of the expense for Woodard's deposition testimony is hereby DENIED.

In the case of Richard Panning, Plaintiff argues that it stipulated to the information contained in Mr. Panning's testimony (i.e., Defendant's tariffs) and, therefore, Plaintiff should not bear the costs associated with unnecessary testimony. *See United States v. Metropolitan Disposal Corp.,* 622 F.Supp. 1262 (D.Or.1985), *aff'd,* 798 F.2d 1273 (1986) (Contemnor not liable for witness fees where contemnor had agreed to stipulate to witness' testimony and witness' trial testimony was primarily covered by the stipulation). Mr. Panning's testimony, however, was not merely a recital of North American's tariffs; nor was it predominantly a recital of North American's tariffs. Consequently, Defendant's motion for costs relative to the testimony of witness Richard Panning in the amount of $1,307.35 is hereby ALLOWED.

Finally, Plaintiff contests the costs Defendant seeks relative to the testimony of Manuel Dias, who appeared as a witness for both parties and had to be present during all four days of trial. Plaintiff claims that Defendant only needed Dias's presence on one of the four days; Plaintiff required his presence on the other three days. Clearly, Mr. Dias's testimony was necessary and Defendant's request is within the statutory bounds. It also

---

7. Plaintiff does not dispute the $132.25 Defendant requests for the court stenographer for the transcript of Woodard's testimony.

8. Because both parties read portions of Woodard's testimony into the record, there is no claim here that Woodard's testimony was either unreasonable or unnecessary. In addition, Plaintiff does not dispute the propriety of Defendant's

request in the first instance. *See Templeman v. Chris Craft Corp.,* 770 F.2d 245, 248 (1st Cir.), *cert. denied,* 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985) ("[I]f depositions are either introduced in evidence or used at trial, their costs *should be* taxable to the losing party.") (Emphasis added).

clear, however, that neither should Mr. Dias receive double his expenses nor should either party be compelled to pay more than the total amount of statutory costs. Consequently, Plaintiff must pay Defendant the cost of Mr. Dias's presence on all four days of trial less any money Plaintiff has already paid to Mr. Dias as a result of calling Mr. Dias as a witness. Parties are hereby ordered to confer so as to resolve this matter.

Therefore, Defendant's motion for costs is hereby ALLOWED to the following extent:

| | |
|---|---|
| $120.00 | Fees of the Clerk (removal) (uncontested) |
| $132.50 | Fees of the court reporter for Woodard deposition (uncontested) |
| $1,307.35 | Costs associated with Panning testimony |
| $300.75 less monies already paid by Plaintiff. | Costs associated with Dias testimony |

SO ORDERED.